**Law Offices of Jared M. Wichnovitz, P.C.**
Jared M. Wichnovitz, Esq.
NDNY ID: 706741
50 Harrison Street, Suite 206
Hoboken, New Jersey 07030
Office: (732) 765-2157
Fax: (732) 358-0178
Jared@WichnovitzLaw.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BIRCH BOYS, INC.,

Plaintiff,

-against-

JOHN DOES 1–10, being the persons described herein,

Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action No.: 8:26-cv-2255 (MAD/PJE)

Plaintiff Birch Boys, Inc. ("Birch Boys" or "Plaintiff"), by and through its undersigned counsel, alleges upon personal knowledge as to its own conduct and upon information and belief as to other matters as follows:

## NATURE OF THE ACTION

1. This action arises from a coordinated business-email-impersonation and wire-diversion scheme in January 2026. Unknown persons registered the deceptively similar

domain blrchboys.com, impersonated Birch Boys' president, diverted an intended $250,000.00 equity investment, and used the investor's email account to delay detection.

2. Plaintiff asserts a claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), together with related state-law claims for fraud, conversion or money had and received (in the alternative and to the extent Plaintiff has standing), tortious interference with contract, and deceptive use of a corporate name.

**JURISDICTION AND VENUE**

3. This Court has original subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the ACPA claim arises under federal trademark law. Plaintiff's ACPA claim concerns its federally registered BIRCH BOYS trademark, U.S. Registration No. 6,266,009.

4. This Court has supplemental jurisdiction over the related New York-law claims under 28 U.S.C. § 1367(a), because they arise from the same transactions and common nucleus of operative facts.

5. This Court has personal jurisdiction over Defendants to the extent their purposeful conduct was expressly directed at a New York corporation and its investment transaction, and they knowingly caused injury in New York. Plaintiff will seek jurisdictional discovery if necessary once the identities and locations of Defendants are learned.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, including receipt of the fraudulent communications, the intended receipt of investment funds, and resulting business injury in Franklin County, New York.

**PARTIES**

7. Plaintiff Birch Boys, Inc. is a New York corporation with its principal office at 12 Cliff Avenue, Tupper Lake, New York 12986, in Franklin County. It markets functional mushroom products under the BIRCH BOYS name and mark.

8. Defendants John Does 1–10 are presently unidentified individuals and/or entities acting individually or in concert. Plaintiff intends to seek limited early discovery and amend this pleading when their identities are established.

9. John Doe 1 registered or controlled the domain blrchboys.com through NameSilo on or about January 15, 2026, associated with username "st33t101," email hpmakar@yahoo.com, registrant name "Marks Wills," and IP address 65.108.15.173. These identifiers do not establish the true identity of the registrant.

10. John Doe 2 operated or used the lookalike email account garrett@blrchboys.com to transmit substituted payment instructions to Vanguard Atlantic Ltd. ("Vanguard").

11. John Doe 3 accessed or used the lee@vanguardatlantic.com mailbox without authorization and sent deceptive reassurances to Birch Boys on January 16 and 19, 2026.

12. John Doe 4 received, controlled, or facilitated disposition of the diverted funds through the purported Wells Fargo beneficiary account ending 4803. The actual ownership and classification of that account remain unverified.

13. John Does 5–10 are other persons who knowingly participated in the domain registration, impersonation, wire diversion, concealment, or receipt of proceeds. These designations may overlap; no separate person is alleged for each identifier absent discovery.

## FACTUAL ALLEGATIONS

14. Birch Boys, Inc. owns the BIRCH BOYS trademark, U.S. Trademark Registration No. 6,266,009, registered February 9, 2021, for goods identified in International Classes 5 and 30, including herbal and mushroom-derived products. Plaintiff uses the BIRCH BOYS mark and its legitimate domain birchboys.com in commerce to identify its goods, business, and electronic communications. The federal registration predates Defendants' January 15, 2026 registration of blrchboys.com by nearly five years. The mark was distinctive when Defendants registered the lookalike domain.

15. On January 12, 2026, Birch Boys and Vanguard entered into a subscription agreement for Vanguard to acquire approximately 142,045.45 shares of Series B Preferred Stock at $1.76 per share, for a total investment of $250,000.

16. The agreed beneficiary was Birch Boys' account at Adirondack Regional Federal Credit Union (the "Credit Union"). The original wire-instruction form included in the January 8, 2026 subscription materials identified Alloya Corporate Federal Credit Union as the intermediary, specified routing number 221381715, and expressly instructed the sending institution to identify Adirondack Regional Federal Credit Union in the beneficiary-financial-institution field. These material instructions were present from the outset. On January 13, Vanguard initiated a $250,000 wire through Charles Schwab. Although Schwab reported completion on January 14, Alloya returned the funds on January 15 because the transmitted payment lacked the required further-credit beneficiary designation. That omission in the transmitted wire did not reflect an omission from Birch Boys' original written instructions.

17. Melinda Little, a Birch Boys director and coordinator at Point Positive, handled distribution of subscription materials and investor communications. She received Birch

Boys' wire instructions in October 2025 and in the January 8 subscription package. On January 15, she requested clarification for investors. At approximately 2:04 p.m., Garrett L. Kopp provided a highlighted version emphasizing the already-existing beneficiary language and forwarded it to Vanguard's Ernest E. "Lee" Keet. At approximately 2:28 p.m., Keet stated that Schwab requested a second routing number; at 2:30 p.m., Kopp supplied the Credit Union's routing number, 221380570, copying Little. At approximately 3:35 p.m., Little requested further clarification; Kopp sent a further reworded form at approximately 4:00 p.m. Every iteration directed payment to the same legitimate Credit Union account, not to Wells Fargo.

18. At approximately 3:42 p.m. that day, an unknown actor registered blrchboys.com. The name substitutes a lowercase "l" for the "i" in birchboys.com, making it visually confusingly similar to Plaintiff's domain and name.

19. At approximately 3:59 p.m., an email from garrett@blrchboys.com copied Kopp's genuine 2:30 p.m. correspondence and signature while substituting instructions to send the investment to an account styled "Birch Boys Inc." using Wells Fargo routing number 121000248 and a purported 17-digit beneficiary account ending 4803. At approximately 4:08 p.m., Keet replied to the impersonating address that Schwab was holding the wire. At approximately 4:14 p.m., a second fraudulent message directed him to have Schwab return the held transfer and resend it to the substituted account. Neither communication originated from Birch Boys.

20. Kopp and Birch Boys did not authorize either fraudulent message, did not create the purported receiving account, and never instructed Vanguard to pay a Wells Fargo account. The identity of the ultimate beneficiary and whether the account was a Wells

Fargo deposit account, intermediary account, or virtual account require tracing and discovery.

21. By approximately 4:39 p.m. on January 15, Schwab had accepted the third $250,000.00 wire request directed to the substituted beneficiary (Schwab case WI-115441989, reference 00671945, bank reference S066015425EA01). Keet's contemporaneous email attached a confirmation and asked Little to note the new instructions for other investors. At approximately 6:03 p.m., Little responded, "Thanks Lee. I already have." The present records do not establish which instructions she distributed or that she participated in the diversion. The funds never reached Birch Boys. Schwab materials identify CHIPS as the transfer rail, although other records use inconsistent terminology. The exact release time, receiving institution, beneficiary and subsequent transfers require banking discovery. The correct account identifier has 17 digits and ends 4803; an earlier subpoena omitted a digit. The full number is withheld from this public pleading.

22. On January 16, 2026, Kopp wrote at approximately 1:13 p.m. that the investment had not arrived. At approximately 3:57 p.m. Eastern, an unauthorized user of Keet's genuine mailbox represented that the wire had been processed and would arrive Monday. At approximately 4:12 p.m., Kopp specifically warned Keet that the transfer confirmation identified Wells Fargo, where Birch Boys had no account. At approximately 4:52 p.m., a reply from Keet's genuine mailbox falsely stated that the problem had been on Schwab's side and had already been corrected. At 5:09 p.m., Kopp responded that he would follow up Monday, demonstrating actual reliance on the false assurance.

23. On January 19, 2026, at approximately 7:38 a.m. Eastern, another message from Keet's mailbox represented that funds would arrive on January 23. Keet denied authoring these messages. Forensic email-header analysis identified use of Roundcube webmail rather than Keet's customary Outlook client; the precise unauthorized user remains unidentified. The three unusual messages used Roundcube, a distinct login identifier, and Pacific-time settings; the common time-zone setting with the Titan messages is circumstantial evidence of coordination, not proof of a particular actor's identity.

24. On January 29, 2026, Kopp identified the lookalike address in a forwarded copy of the fraudulent email. He reported the matter to New York State Police on February 4 and provided a supporting deposition on February 5. Octillo's February 2026 forensic examination found no compromise of Birch Boys' email environment. A subsequent review of raw email headers identified the three January 16 and 19 messages as having been generated through Roundcube webmail from Keet's genuine mailbox, unlike his ordinary Outlook and Apple-device messages. These technical indicators support unauthorized mailbox use, but do not establish the identity of the user.

25. NameSilo records associate the lookalike domain with username "st33t101," email hpmakar@yahoo.com, registrant name "Marks Wills," and IP address 65.108.15.173. The same NameSilo account was accessed in November 2025 and on January 15, 16 and 26, 2026. The domain registration record was modified on September 28, 2026. The registrant's actual identity and any connection among the registrar account, Titan email service, and Keet's webmail sessions remain subjects for expedited discovery. No individual is identified as a participant merely because that person received or forwarded investment correspondence.

26. Birch Boys and Vanguard executed an Omnibus Agreement and Mutual Release effective June 5, 2026, following negotiations over the diverted investment. Its recitals expressly recognize that the January 15 wire diversion prevented Vanguard from successfully implementing the subscription payment, without assigning fault. Under §§ 3–5, Birch Boys agreed to issue 198,700 Series B Preferred shares at a deemed $1.76 per share, Vanguard agreed to pay $150,000 in full satisfaction of its subscription obligations, and the $100,000 February 18 promissory note was cancelled. Vanguard paid $150,000 on June 8. Section 6 expressly allocates any recovered diverted funds or related insurance proceeds solely to Vanguard, while requiring both parties to cooperate in recovery. Sections 7–9 contain broad mutual releases between Birch Boys and Vanguard and disclaim admissions of liability. Plaintiff sues the unidentified third-party wrongdoers, not Vanguard or its released representatives, and does not seek the diverted funds for its own account.

27. As a direct and foreseeable consequence of Defendants' fraudulent diversion and concealment of the investment, Birch Boys incurred $14,052.50 in responsive legal and cybersecurity expenses and $9,253.63 in credit-card interest from January through June 2026, totaling $23,306.13. Birch Boys also expended $34,520.57 preparing for the acquisition and Series B financing, including corporate-governance revisions, capitalization work, and transaction documentation, expenditures whose intended business benefit was impaired by the diversion. The ensuing restructuring required Birch Boys to issue additional Series B shares to Vanguard, valued by the parties at $100,000, thereby reducing the company's remaining capacity to raise capital through the authorized Series B offering. Birch Boys sustained an additional $100,000 in lost

fundraising opportunity associated with that reduction in financing capacity. Plaintiff seeks damages for these losses, together with continuing legal and financing expenses, acquisition delays, and other consequential business losses in amounts to be established at trial, without double recovery for overlapping items. The $250,000 diverted payment is separately allocated to Vanguard under the Omnibus Agreement. Kopp's individual ownership dilution and loss of majority control are not asserted as his personal damages in this corporate-only action.

28. Plaintiff seeks only its own nonduplicative, legally recoverable losses, and acknowledges that the Omnibus Agreement grants Vanguard the proceeds of any recovery of the diverted funds or related insurance. Plaintiff does not allege that the agreement assigned Vanguard's tort claims to Birch Boys. To the extent the parties' releases or the terms of the subscription affect any alleged contract breach, Plaintiff pleads interference subject to proof of the contractual obligation, absence of a legally sufficient excuse, and resulting injury. Plaintiff will seek amendment or joinder only if supported by the governing agreements and applicable law.

28A. The original January 15 fraudulent messages are preserved in native .eml format with full message headers. The 3:59 p.m. message requested that Keet reprocess the investment to the purported Wells Fargo account and asserted there was no need for an intermediary routing number. The 4:14 p.m. message asked Keet to have Schwab return the held payment or wait for its return before reprocessing to the substituted account. The native records also preserve Kopp's genuine January 15, 2:04 p.m. forwarding of the highlighted wire instructions to Keet and Little; Little's 3:35 p.m. clarification request; Kopp's 4:00 p.m. further

revision to Little; and Keet's 4:39 p.m. confirmation. These communications show that Birch Boys was continuing to clarify legitimate instructions while the impersonator was directing the investor to an entirely different beneficiary.

28B. Native .eml records also preserve the January 16, 3:57 p.m. and 4:52 p.m., and January 19, 7:38 a.m. messages from Keet's mailbox, together with Kopp's January 16, 4:12 p.m. warning, his 5:09 p.m. response, and his January 19, 7:41 a.m. reply. The three purported Keet messages have distinctive Roundcube/webmail and Pacific-time header characteristics unlike his ordinary Outlook communications. The headers are evidence of unusual account use and the fraudulent concealment sequence; they do not, without provider login records, identify the person who accessed the mailbox.

28C. On January 26, Keet forwarded a Schwab confirmation showing the January 15 payment directed to the substituted bank. On January 29, Keet forwarded the impersonating email as if it were Kopp's own instructions; at approximately 12:28 p.m., Kopp identified the one-character domain substitution and expressly denied sending that message. The ensuing investigation included Octillo's cybersecurity review, which found no compromise of Birch Boys' own email environment. The provider records necessary to identify the wrongdoers include NameSilo registration, payment and September 28 modification logs; Titan subscriber and login records; SureSupport Roundcube access records; and bank payment-tracing records.

**FIRST CLAIM FOR RELIEF**
**CYBERSQUATTING — 15 U.S.C. § 1125(d)**

29. Plaintiff repeats and realleges the preceding allegations.

30. Plaintiff owns the federally registered BIRCH BOYS mark, U.S. Trademark Registration No. 6,266,009, registered February 9, 2021. The mark was distinctive at the time of the January 15, 2026 registration of blrchboys.com. Defendants deliberately substituted a lowercase “l” for the letter “i” in Plaintiff’s legitimate domain birchboys.com, creating a visually confusingly similar domain name. Defendants lacked authorization from Plaintiff and had no trademark rights or bona fide commercial reason to use the imitation domain.

31. Defendants registered and used blrchboys.com with bad-faith intent to profit from Plaintiff’s mark, in violation of 15 U.S.C. § 1125(d)(1)(A). They used the domain to impersonate Plaintiff’s president, Garrett L. Kopp, and to transmit fraudulent banking instructions redirecting an intended $250,000 equity investment to an unauthorized account. The timing of the registration, the deceptive one-character substitution, the use of false registrant information including the name “Marks Wills,” the lack of any legitimate use, and the attempted financial gain support an inference of bad-faith intent to profit. The domain’s use injured Plaintiff’s business, reputation, and fundraising activities.

32. Plaintiff seeks transfer of blrchboys.com, appropriate injunctive relief, and, at its election and subject to the requirements of 15 U.S.C. § 1117(d), statutory damages of not less than $1,000 and not more than $100,000 for the offending domain name in lieu of actual damages and profits, or such actual damages and profits as are otherwise recoverable. Plaintiff further seeks allowable costs and, where legally justified, attorney’s fees, without duplicative recovery.

## SECOND CLAIM FOR RELIEF
## FRAUD

33. Plaintiff repeats and realleges the preceding allegations.

34. On January 15, 2026, Defendants knowingly misrepresented that the lookalike email supplied authorized Birch Boys wire instructions. On January 16 and 19, 2026, other participating Defendants sent false reassurances through Keet's account about the transfer's status. The specific messages, times, senders, and representations are pleaded above. Specifically, the 3:59 p.m. and 4:14 p.m. January 15 messages were directed to Keet and falsely purported to be authorized by Kopp; the January 16, 3:57 p.m. and 4:52 p.m., and January 19, 7:38 a.m. messages were directed to Kopp and falsely purported to originate from Keet. The senders knew the account substitution and assurances were false.

35. Defendants intended Vanguard to rely upon the substituted instructions in sending funds and intended Birch Boys, through Kopp, to rely upon the subsequent reassurances by postponing investigation and attempted recovery. The diversion induced Vanguard to direct its payment elsewhere, and the later reassurances induced Birch Boys to defer urgent investigation and recall efforts.

36. Kopp, acting for Birch Boys, received and relied on the January 16, 4:52 p.m. message purporting to be from Keet, which falsely stated that the banking error had been corrected; he responded at approximately 5:09 p.m. that he would follow up Monday. The January 19, 7:38 a.m. message further represented that the money would arrive January 23, and Kopp deferred escalation in reliance on those assurances. The misrepresentations were intended to delay detection, recall and protective measures.

Birch Boys seeks only incremental, proximately caused corporate losses from its own reliance, including provable response costs and financing consequences, without asserting Vanguard's separate wire loss as Birch Boys' property.

**THIRD CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**

37. Plaintiff repeats and realleges the preceding allegations.

38. Birch Boys had a valid subscription agreement with Vanguard. Defendants knew of the investment and its payment obligations because the intercepted email chain contained the transaction details. The agreement required delivery of subscription consideration to Birch Boys, not merely transmission to an account using its name. Defendants' contemporaneous interception and substitution demonstrate knowledge of the specific contract and intentional procurement of nonperformance.

39. Defendants knew of Birch Boys' January 12, 2026 subscription agreement with Vanguard through the investment correspondence they accessed and intercepted. Defendants intentionally procured Vanguard's failure to perform its contractual payment obligation by impersonating Birch Boys' president and directing Vanguard to send the $250,000.00 subscription payment to an unauthorized beneficiary rather than Birch Boys' designated account. Vanguard did not deliver the contracted payment to Birch Boys, thereby breaching that payment obligation. Defendants' intentional interference caused Birch Boys to lose the benefit of timely contractual performance and to incur the financing, restructuring, investigation, and other business losses alleged herein. The subsequent Omnibus Agreement addressed the consequences of the diverted payment but did not authorize Defendants' misconduct.

## FOURTH CLAIM FOR RELIEF
## CONVERSION / MONEY HAD AND RECEIVED (IN THE ALTERNATIVE)

40. Plaintiff repeats and realleges the preceding allegations.

41. The $250,000 was a specifically identifiable payment intended for Birch Boys. Recipient Defendants wrongfully exercised dominion over the funds or received their benefit without entitlement. The transfer was identifiable as a particular investment payment, not a generalized debt; the recipient actors exercised unauthorized dominion over it. Any restitution or constructive-trust remedy is requested only to the extent of Birch Boys' legally cognizable interest and subject to the Omnibus Agreement and avoidance of double recovery.

42. This claim is asserted only to the extent Plaintiff establishes a possessory or equitable right to relief and is subject to the Omnibus Agreement allocating recovered funds to Vanguard; Plaintiff seeks no duplicative recovery.

## FIFTH CLAIM FOR RELIEF
## DECEPTIVE USE OF CORPORATE NAME — N.Y. GEN. BUS. LAW § 133

43. Plaintiff repeats and realleges the preceding allegations.

44. Defendants used the name "Birch Boys, Inc." in a fraudulent email address, impersonated correspondence, and payment instructions with intent to deceive others into believing the communications and bank beneficiary were authorized by Plaintiff. Defendants used the corporate designation in the substituted bank-beneficiary field and in communications designed to induce the investor to believe it was dealing with Birch Boys. Plaintiff requests relief only if a private remedy is available under the statute.

45. Plaintiff seeks relief authorized by N.Y. Gen. Bus. Law § 133, including appropriate injunctive relief, subject to establishing the statute's applicability to the proved conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the responsible Defendants as follows:

A. Compensatory damages for proven losses belonging to Birch Boys, without duplicating amounts recoverable by Vanguard; Including responsive expenses, properly proved wasted transaction expenditures, incremental financing costs, and separately valued capitalization losses, subject to causation and mitigation.

B. Transfer of blrchboys.com to Birch Boys and appropriate injunctive relief under the ACPA;

C. At Plaintiff's election and upon proof, actual damages and profits or statutory damages under 15 U.S.C. § 1117(d);

D. Appropriate relief on the supplemental state-law claims, including restitution only to the extent Plaintiff has standing and is entitled to it;

E. Punitive damages on any claim for which they are legally available and supported by proof;

F. Prejudgment and postjudgment interest, taxable costs, and attorney's fees only where authorized by law, including 15 U.S.C. § 1117(a) where applicable;

G. Such other and further relief as the Court deems just and proper.

**LAW OFFICES OF JARED M. WICHNOVITZ, P.C.**
Attorneys for Plaintiff, BIRCH BOYS, INC.

By: /s/ Jared M. Wichnovitz
JARED M. WICHNOVITZ, ESQ.

Dated: October 30, 2026

**JURY DEMAND**

Plaintiff hereby demands trial by a jury on all triable issues raised in this Complaint.

By: /s/ Jared M. Wichnovitz
JARED M. WICHNOVITZ, ESQ.

Dated: October 30, 2026

**CERTIFICATION**

I hereby certify that the matter in controversy herein is not the subject of any other Court, Arbitration, or Administrative Proceeding.

By: /s/ Jared M. Wichnovitz
JARED M. WICHNOVITZ, ESQ.

Dated: October 30, 2026